Merrimack,
No. 4988.

MONITOR PUBLISHING COMPANY & a.

*v.*

LEONARD S. HILL, *Comptroller & a.*

Argued September 6, 1961.

Decided September 14, 1961.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiffs.

*Gardner C. Turner,* Attorney General, for the defendants, furnished no brief.

*Arthur G. Marx* (by brief and orally), for the intervening defendant Samuel Green, as a member and President of the Senate.

*R. Wayne Crosby* (by brief and orally), for the intervening defendant Stewart Lamprey, as a member and Speaker of the House of Representatives.

KENISON, C. J.   This is a taxpayers' suit brought by the Monitor Publishing Company, Inc., a newspaper, and an editor thereof, James M. Langley individually, against Leonard S. Hill, Comptroller and Alfred S. Cloues, State Treasurer, seeking a determination as to the constitutionality of Laws 1961, 203:1, "An Act relative to legislative mileage." While the reserved case transferred questions relating to the entire act the argument of counsel was confined to section 1 thereof and our decision is likewise so confined. This statute, which was approved June 28, 1961 and made effective retroactively as of January 4, 1961, reads in pertinent part as follows: "A member of the general court shall be allowed for mileage per mile of the round trip to and from his town or city ward each day of attendance at the following rates, for the first forty-five miles thereof twenty-five cents per mile, and for all miles in excess of forty-five miles eight cents per mile, provided, however, that mileage shall be computed on a minimum basis of twenty miles per round trip." The obvious effect of this statute was to guarantee each legislator a minimum mileage of five dollars. The plaintiffs claim that this mileage is excessive in amount and violates New Hampshire Constitution, Part II, Article 15th as amended November 30, 1960, which limits the compensation of members of

the Legislature to "the sum of two hundred dollars and . . . mileage for actual daily attendance on legislative days." The intervening defendants claim that the statute is not in conflict with the State Constitution.

In 1949 the Legislature was advised (*Opinion of the Justices,* 95 N. H. 533) that mileage rates of four dollars for the first mile and five cents for each successive mile thereafter on a daily round-trip basis were neither compensation nor mileage as those terms were used in Article 15th of our Constitution and therefore were prohibited. In *Opinion of the Justices,* 95 N. H. 552, a graduated mileage schedule was sustained. The minimum mileage schedule proposed by the 1961 amendment of twenty-five cents for the first forty-five miles and a minimum mileage allowance of five dollars are in excess of any mileage payments allowed in any state of the Union.

While the Legislature has the power to determine any mileage rate that bears a reasonable relation to the cost of travel, it has no power to increase its compensation by means of mileage payments which do not have a reasonable relation to the cost of travel. We have been unable to find any precedent in any other state legislature for a mileage rate of twenty-five cents or a minimum mileage payment of five dollars. The mileage allowed federal employees when traveling by private automobiles under Public Law 87-139 signed by the President August 14, 1961, cannot exceed twelve cents per mile. The highest rate allowed in any other state that has been called to our attention is twenty cents per mile. Granting the full force of inflation, we cannot say that a minimum mileage rate of five dollars per day regardless of the distance traveled or a daily rate of twenty-five cents a mile complies with the constitutional mandate set forth in New Hampshire Constitution, Part II, Article 15th. In this state compensation of legislators for a legislative term was fixed at two hundred dollars in another century. Under present conditions it is grossly inadequate. This antediluvian standard for the compensation of the legislators has been almost universally criticized by both experts and laymen alike. Zeller, American State Legislatures, *pp.* 76-78 (1954); Walker, The Legislative Process, *pp.* 156-157 (1948); Graves, State Constitutional Revision, *p.* 208 (1960). Significantly legislators themselves have taken a similar view as appears in the final report of the Committee on Legislative Processes and Procedures of the National Legislative Conference entitled, "American State Legislatures in Mid-Twentieth Century," published by the Council of State

Governments, April 1961. Presumably this group of representative legislators are particularly qualified to speak from experience and their recommendations cannot be dismissed out of hand as theoretical, impractical or obsolete. Recommendation 4 of this report, which appears at page 12 thereof, reads as follows: "4. Legislative Compensation. From the viewpoint of good public service, and in light of the increasing amounts of time that legislators must devote to their duties both during and between sessions, their compensation in most states is now much too low. Likewise the pay of legislative leaders, faced with even greater demands on their time in most jurisdictions is notably out of line. Flat salaries rather than a per diem allowance should be paid. Salary and reimbursement of necessary expenses should be provided in amounts sufficient to permit and encourage competent persons to undertake growingly important and time-consuming legislative duties. Actual amounts of salary and expense money should be provided by statute rather than specified in the constitution."

More than a century ago a wise judge made the following observation: "Judges are not necessarily to be ignorant in Court of what every one else, and they themselves out of Court are familiar with." *Lumley* v. *Gye*, 2 El. & Bl., Q.B., 216, 267 (1853). By the same token this court is not unaware of the public service performed by legislators and their need for realistic compensation. But this need cannot be remedied by statutes providing for mileage in the face of the rigidity of the constitutional limitation in Part II, Article 15th of our Constitution, which this court is sworn to uphold.

We conclude that Laws 1961, chapter 203:1 is unconstitutional on its face for the reasons set forth in *Opinion of the Justices*, 95 N. H. 533, decided in 1949. Inasmuch as this section of the statute is invalid in its entirety it follows that RSA 14:15 (supp) as amended by Laws 1957, 272:1 is the presently effective statute under which mileage is to be paid to members of the State Legislature. *Williams* v. *State*, 81 N. H. 341. As previously indicated nothing in this opinion is to be construed as casting any doubt as to the validity of other sections of chapter 203, Laws 1961.

There remain only subsidiary matters to be considered. All counsel were in agreement that this court had the power to determine the constitutionality of section 1 of chapter 203, Laws 1961 without the necessity of findings by the Superior Court as to the actual cost of travel, which by any test is far below the mileage allowance specified in the 1961 statute. The further question was raised as

to whether all of the 424 members of the Legislature were required to be made parties to this proceeding. We think that this is a representative suit and that the intervening defendants, individually and in their capacities as the presiding officers of the two branches of the Legislature, could and did fairly represent the interests of all legislators in the mileage payments proposed under the 1961 statute. See *Textile &c. Union* v. *Textron*, 99 N. H. 385.

Exception was taken to the refusal of the Trial Court to grant a temporary injunction in the present case. In view of the expedition with which this case was heard in the Trial Court and transferred to this court, there is no occasion to reconsider the case of *Musgrove* v. *Parker*, 84 N. H. 550, which discouraged the issuance of temporary injunctions in cases where constitutional issues are presented. That case does not absolutely forbid such injunctions but it places a heavy burden on the court before exercising that power, and we find nothing in the circumstances of the present case which required the issuance of an injunction.

The plaintiffs are entitled to an order declaring Laws 1961, 203:1 null and void and to an injunction preventing the defendants and their deputies from paying any sums out of the state treasury pursuant to that section of the statute.

*Remanded.*

All concurred.